UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

                    v.

SAMUEL GENTLE,

                              Defendant.

**COMPLAINT**

18 Civ. 6114

        Plaintiff, United States of America, for its complaint against defendant Samuel Gentle,

states as follows:

PRELIMINARY STATEMENT

        1.      The United States brings this action to seek a permanent injunction against

Defendant Samuel Gentle ("Defendant"), who was found guilty on July 25, 2016, on 38 counts

of aiding and assisting in the preparation of false and fraudulent federal tax returns.[1]

        2.      The United States seeks the entry of a permanent injunction against Defendant: (i)

pursuant to 26 U.S.C. § 7407, to bar him permanently from preparing federal tax returns and

---

[1] Defendant was also found guilty on one count of obstructing and impeding the due
administration of the Internal Revenue Service ("IRS"), identified as Count One of the
indictment.  Defendant appealed his conviction on this count.  *See U.S. v. Gentle*, No. 16-4020
(2d Cir.).  Subsequently, in light of the Supreme Court's recent decision in *Marinello v. United
States*, 138 S. Ct. 1101 (2018), the Government filed a letter pursuant to Federal Rule of
Appellate Procedure 28(j) on March 28, 2018, stating that the Second Circuit should: (1) affirm
Defendant's convictions on the remaining counts, which were not challenged in his appeal and
are unaffected by the *Marinello* decision; (2) vacate Defendant's conviction only as to Count
One; and (3) remand to the District Court for resentencing.  *See U.S. v. Gentle*, No. 16-4020,
Dkt. No. 73 (2d Cir.).   By summary order dated May 9, 2018, the Second Circuit vacated the
judgment as to Count One and remanded the case to the District Court for *de novo* resentencing
on the remaining counts of conviction.  *Id.*, Dkt. No. 82.  Defendant's re-sentencing is presently
scheduled in District Court for July 19, 2018, before the Honorable Cathy Seibel.  *See United
States v. Gentle*, 16-cr-238 (CS), Dkt. No. 34.

other related documents and forms on behalf of another taxpayer, either in his individual capacity or through any other individual or other entity; (ii) pursuant to 26 U.S.C. § 7408, to bar him from engaging in any activity subject to penalty under 26 U.S.C. § 6701, and (iii) pursuant to 26 U.S.C. § 7402, to bar him from engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

3.      As established at his criminal trial and set forth below, during the tax years 2008 through 2014, the Defendant operated a tax return preparation business, through which he prepared and caused to be filed over 16,000 tax returns.  During these years, Defendant, whose businesses depended on word-of-mouth referrals, systematically and intentionally added fake deductions to his clients' federal tax returns in order to fraudulently reduce his clients' tax liabilities and/or obtain tax refunds from the IRS to which his clients were not lawfully entitled.

4.      In particular, Defendant regularly prepared – and filed with the IRS – false and fraudulent federal tax returns and accompanying forms on behalf of clients who were unaware of the false deductions and other fraudulent statements.

5.      Defendant's practice of filing false and fraudulent federal tax returns included the fabrication and inflation of itemized deductions such as: (i) unreimbursed employee business expenses; (ii) gifts to charity; and (iii) Schedule C or Schedule C-EZ business expenses.

6.      When an IRS undercover agent posing as a client in 2012 requested that Defendant prepare a federal tax return for him, Defendant responded as he regularly did: he prepared a tax return for the undercover agent that contained false and fraudulent deductions, despite the fact that the undercover agent did not make any statements asserting relevant expenses and did not provide Defendant with any documentation in support of such expenses.

7.      In addition to the filing of fraudulent tax returns on behalf of clients, in the tax

years 2010 through 2014, Defendant filed fraudulent taxes on his own behalf.  In particular, he

concealed portions of the gross receipts from his tax preparation business on his own federal

individual tax returns and on the federal corporate tax returns for GenGen Inc. and GenGen

Financial and thereby reduced his own federal tax liability.

8.      If Defendant is not enjoined in the manner sought here, he will not be subject to

any court-imposed limitation that would prevent him from simply picking up where he left off

after his prison term and working as a tax preparer for compensation.

## JURISDICTION AND VENUE

9.      Pursuant to 26 U.S.C. §§ 7402, 7407 and 7408, this action has been commenced

at the direction of a delegate of the Attorney General of the United States based on a request by a

delegate of the Secretary of the Treasury.

10.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and

26 U.S.C. § 7402(a).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the actions giving rise to this suit took place in this District; pursuant to 26

U.S.C. § 7407(a) because Defendant operated his principal place of business in this District; and

pursuant to 26 U.S.C. § 7408(a) because Defendant has engaged in specified conduct, which the

United States is seeking to enjoin, in this District.

## DEFENDANT'S PRACTICE OF PREPARING AND FILING FRAUDULENT TAX RETURNS

12.     From 1982 until his arrest, Defendant operated his tax return preparation business

principally through two businesses that he owned and controlled, GenGen, Inc. ("GenGen Inc.")

and GenGen Financial, Inc. ("GenGen Financial"), located in Mount Vernon, New York.

Between 2008 and 2014, Defendant prepared, and caused to be filed, an average of 3,200 federal

tax returns annually through these two businesses.

13.     During this time, Defendant regularly used Schedules A, Schedules C, the IRS Form 1040, and other accompanying forms to falsely report various types of fabricated deductions on his clients' federal tax returns.  The Schedule A is an IRS form which is filed in conjunction with a federal individual tax return (IRS Form 1040), when applicable, and is used by taxpayers to claim some permissible deductions from taxable income, including: medical and dental expenses, gifts to charity, job-related and other miscellaneous expenses (such as unreimbursed employee business expenses), and state and local taxes paid.  The Schedule C is an IRS form which is filed in conjunction with a federal individual tax return, when applicable, and is used by taxpayers to report gross receipts, expenses, and profit or loss from a business operated by the taxpayer as a sole proprietorship.

14.     Among other fraudulent practices, Defendant regularly prepared false and fraudulent federal tax returns which overstated his clients' charitable contributions, unreimbursed employee business expenses, mortgage interest, and business losses.

15.     In these instances, Defendant had no basis, either in the form of documents or client statements, for these or other false deductions that he added to his clients' federal tax returns.  On the contrary, when clients met with the Defendant, they typically brought only basic tax documents – such as W2s or 1099s showing their income, mortgage interest statements, receipts for home repair expenses, and retirement account documents – to their meetings with the Defendant.

16.     Defendant's clients typically had no training in accounting or tax preparation, relied on Defendant to prepare accurate federal tax returns for them, and were not aware when the returns were filed that the false deductions had been added to their returns.

17. By including fabricated and inflated items on his clients' federal tax returns, Defendant caused his clients' tax liabilities to be reduced or caused his clients to receive IRS refunds to which they were not lawfully entitled.

18. During the course of its investigation of Defendant, the IRS conducted an examination of 939 federal tax returns filed by Defendant from 2006 through 2015.

19. Of these 939 tax returns, 847 of them were found to have understated the tax liability of the individual taxpayer.   The average tax deficiency was approximately $5,820, with a combined aggregate tax deficiency of $4,929,218.

20. Among thousands of other taxpayers, Defendant's clients included the following individuals:

### a.     Defendant's Preparation of R.G.'s Tax Returns

21. During the relevant time period, R.G. was a licensed practical nurse living in the Bronx.   She had no background in accounting or tax preparation.

22. Defendant prepared R.G.'s federal tax returns for the tax years 2010 to 2012.

23. When Defendant prepared R.G.'s federal tax return for the 2010 tax year, Defendant fraudulently asserted a deduction for unreimbursed employee business expenses in an amount of $6,620, even though R.G. did not provide Defendant with any receipts at all for unreimbursed employee business expenses or make any statements to Defendant asserting such expenses.  Defendant also fraudulently included a deduction for a charitable donation in the amount of $525 on the same federal tax return, even though R.G. did not provide Defendant with any records of charitable donations or make any statements to Defendant claiming she made such donations.  After the filing of the fraudulent 2010 tax return prepared by Defendant, R.G. received a tax refund from the IRS in the amount of $3,617 for the year.

24.     For the tax years 2011 and 2012, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of R.G.  On each occasion, Defendant fraudulently asserted deductions for charitable donations and unreimbursed employee business expenses on R.G.'s tax return, even though there was no basis to assert such deductions.  After Defendant caused the fraudulent returns to be filed, R.G. received tax refunds for those years.

> **b.     Defendant's Preparation of Y.C.'s Tax Returns**

25.     For the relevant time period, Y.C. was a registered nursing living in the Bronx. She had no background in accounting or tax preparation.

26.     Defendant prepared federal tax returns on behalf of Y.C. for the tax years 2009 to 2011.

27.     When Defendant prepared Y.C.'s federal tax return for the 2009 tax year, Defendant grossly inflated Y.C.'s unreimbursed employee business expenses, asserting a deduction for $16,505, even though Y.C. did not provide Defendant with receipts or otherwise tell Defendant that she had unreimbursed employee business expenses in that amount.  After Defendant caused the fraudulent 2009 federal tax return to be filed, Y.C. received a refund of $1,667 for the year.

28.     For the tax years 2010 and 2011, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of Y.C.  On those occasions, Defendant also fraudulently claimed deductions for unreimbursed employee business expenses on Y.C.'s federal tax returns, even though there was no basis to assert the deductions in the amount claimed.  After Defendant caused the fraudulent tax returns to be filed, Y.C. received tax refunds for those years.

> **c.     Defendant's Preparation of J.B.'s Tax Returns**

29.     During the relevant time period, J.B. was a Brooklyn resident who worked as a

doorman at various locations in New York City.  He had no background in accounting or tax preparation.

30.     Defendant prepared federal tax returns for J.B. for the tax years 2009 to 2011.

31.     When Defendant prepared J.B.'s federal tax return for the 2009 tax year, Defendant inflated J.B.'s unreimbursed employee business expenses, asserting a deduction for $2,490 even though J.B. did not provide Defendant with receipts or otherwise tell Defendant that he had unreimbursed employee business expenses in that amount.   After Defendant caused the fraudulent 2009 federal tax return to be filed, J.B. received a tax refund from the IRS in the amount of $5,139 for the year.

32.     For the tax year 2011, Defendant similarly prepared, and caused to be filed, a false and fraudulent tax return on behalf of J.B.  On that occasion, Defendant again fraudulently claimed a deduction for unreimbursed employee business expenses on J.B.'s tax return even though there was no basis to assert the deduction in the amount claimed.  After Defendant caused the fraudulent tax return to be filed, J.B. again received a tax refund from the IRS for that year.

**d.     Defendant's Preparation of T.F.'s Tax Returns**

33.     During the relevant time period, T.F. was a nurse living in Queens.  She had no background in accounting or tax preparation.

34.     Defendant prepared federal tax returns for T.F. for the tax years 2009, 2011 and 2012, among other years.

35.     When Defendant prepared T.F.'s individual federal tax return for the 2009 tax year, Defendant used the Schedule C to fabricate a variety of business expenses for T.F., including $6,525 in car and truck expenses, $15,078 in legal and professional services, $650 in repairs and maintenance, $2,500 for supplies, and $700 for other expenses.  T.F. did not provide

Defendant with receipts for such expenses or make any statements to Defendant asserting expenses in these amounts.  After Defendant caused the fraudulent 2009 federal tax return to be filed, T.F. received a tax refund from the IRS in the amount of $266 from the federal government for the year.

36.     For the tax years 2011 and 2012, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of T.F.  For the tax year 2011, Defendant again prepared a tax return for T.F., which falsely asserted that T.F. had incurred a variety of expenses in connection with a business for the year, including $5,160 in car and truck expenses, $3,500 in expenses for other business property, $2,635 in supplies, along with a tentative business loss in the amount of $4,067.  The 2011 return also contained a false deduction for employee business expenses in the amount of $6,995.

e.     **Defendant's Preparation of S.W.'s Tax Returns**

37.     For the relevant time period, S.W. lived in New York City and in Pennsylvania. She was employed by various entities, including a reinsurance company, the U.S. Census Bureau and a shelter.  She had no background in accounting or tax preparation.

38.     Defendant prepared federal tax returns on behalf of S.W. for the tax years 2009 to 2011.

39.     When Defendant prepared S.W.'s federal tax return for the 2009 tax year, Defendant fraudulently asserted a deduction for unreimbursed employee business expenses in an amount of $8,650, even though S.W. did not provide Defendant with any receipts at all for unreimbursed employee business expenses or make any statements to Defendant asserting such expenses.  After Defendant caused the fraudulent 2009 federal tax return to be filed, S.W. received a tax refund from the IRS in the amount of $8,129 for the year.

40.     For the tax years 2010 and 2011, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of S.W.  On each occasion, Defendant fraudulently asserted deductions for unreimbursed employee business expenses on S.W.'s tax return, even though there was no basis to assert such deductions.  After Defendant caused the fraudulent returns to be filed, S.W. received tax refunds for those years.

### f.     Defendant's Preparation of E.S.'s Tax Returns

41.     For the relevant time period, E.S. was a crane operator living in the Bronx.  He had no background in accounting or tax preparation.

42.     Defendant prepared federal tax returns on behalf of E.S. for numerous years, including the tax years 2008, 2010 and 2011.

43.     When Defendant prepared E.S.'s federal tax return for the 2008 tax year, Defendant grossly inflated E.S.'s unreimbursed employee business expenses, asserting a deduction for $6,270, even though E.S. did not provide Defendant with receipts or otherwise tell Defendant that he had unreimbursed employee business expenses in that amount.   In addition, Defendant used the Schedule C to falsely assert that E.S. incurred $5,280 in business expenses and thereby suffered a business loss in 2008.  After Defendant caused the fraudulent 2008 federal tax return to be filed, E.S. received a tax refund from the IRS in the amount of $9,595 for the year.

44.     For the tax years 2010 and 2011, Defendant similarly prepared, and caused to be filed, false and fraudulent federal tax returns on behalf of E.S.  On each occasion, Defendant fraudulently asserted deductions for unreimbursed employee business expenses on E.S.'s tax return, even though there was no basis to assert such deductions.  In addition, Defendant falsely asserted that E.S. suffered a business loss in those years.  After Defendant caused the fraudulent

returns to be filed for the tax years 2010 and 2011, E.S. again received tax refunds for those years.

### g.      Defendant's Preparation of K.S.'s Tax Returns

45.      For the relevant time period, K.S. was a clinical social worker living in Highland Falls, New York and employed in the Bronx.  She had no background in accounting or tax preparation.

46.      Defendant prepared federal tax returns on behalf of K.S. and her husband for the tax years 2009 through 2011, among other years.

47.      When Defendant prepared K.S.'s federal tax return for the 2009 tax year, Defendant grossly inflated K.S.'s unreimbursed employee business expenses, asserting a deduction for $11,370, even though K.S. did not provide Defendant with receipts or otherwise tell Defendant that she and her husband had unreimbursed employee business expenses in that amount.   In addition, Defendant used the Schedule C to falsely assert that K.S. incurred $2,249 in business expenses and thereby suffered a business loss in 2009.  After Defendant caused the fraudulent 2009 federal tax return to be filed, K.S. received a refund of $3,099 for the year.

48.      For the tax years 2010 and 2011, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of K.S.  On each occasion, Defendant fraudulently asserted deductions for unreimbursed employee business expenses on K.S.'s tax return, even though there was no basis to assert such deductions.  For the tax year 2010, Defendant also used the Schedule C to falsely assert that K.S. suffered a business loss that year. After Defendant caused the fraudulent returns to be filed for the tax years 2010 and 2011, K.S. again received tax refunds for those years.

**h.      Defendant's Preparation of S.R.'s Tax Returns**

49.      For the relevant time period, S.R. was an elementary school teacher living in Mount Vernon, New York and teaching in New York City.  She had no background in accounting or tax preparation.

50.      Defendant prepared federal tax returns on behalf of S.R. for the tax years 2010 to 2012, among other years.

51.      When Defendant prepared S.R.'s federal tax return for the 2010 tax year, Defendant inflated S.R.'s unreimbursed employee business expenses, asserting a deduction for $3,525, even though S.R. did not provide Defendant with receipts or otherwise tell Defendant that she had unreimbursed employee business expenses in that amount.

52.      For the tax year 2012, Defendant similarly prepared, and caused to be filed, a false and fraudulent tax return on behalf of S.R.  On that occasion, Defendant also fraudulently claimed a deduction for unreimbursed employee business expenses, even though there was no basis to assert the deduction in the amount claimed.

**i.      Defendant's Preparation of A.T.'s Tax Returns**

53.      During the relevant time period, A.T. was a registered nurse living in Ossining, New York.  She had no background in accounting or tax preparation.

54.      Defendant prepared federal tax returns for A.T. for the tax years 2009 to 2012, among other years.

55.      When Defendant prepared A.T.'s federal tax return for the 2009 tax year, Defendant grossly inflated A.T.'s unreimbursed employee business expenses, asserting a deduction for $13,757, even though A.T. did not provide Defendant with receipts or otherwise tell Defendant that she had unreimbursed employee business expenses in that amount.  After

Defendant caused the fraudulent 2009 federal tax return to be filed, A.T. received a tax refund from the IRS in the amount of $4,638 for the year.

56.     For the tax years 2010 through 2012, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of A.T.  On those occasions, Defendant again fraudulently claimed deductions for unreimbursed employee business expenses on A.T.'s federal tax returns, even though there was no basis to assert the deductions in the amount claimed.  After Defendant caused the fraudulent tax returns to be filed, A.T. received tax refunds for those years.

### j.     Defendant's Preparation of R.S.'s Tax Returns

57.     During the relevant time period, R.S. was a computer technician, from Linden, New Jersey.  He also had a side business selling items on eBay and Amazon.

58.     Defendant prepared federal tax returns for R.S. for the tax years 2010 to 2012, among other years.

59.     When Defendant prepared R.S.'s federal tax return for the 2010 tax year, Defendant fraudulently asserted a deduction for unreimbursed employee business expenses in an amount of $6,252, even though R.S. did not provide Defendant with any receipts at all for unreimbursed employee business expenses or make any statements to Defendant asserting such expenses.  After Defendant caused the fraudulent 2010 federal tax return to be filed, R.S. received a tax refund from the IRS in the amount of $1,837 for the year.

60.     For the tax years 2011 and 2012, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of R.S.  On each occasion, Defendant fraudulently asserted deductions for unreimbursed employee business expenses on R.S.'s tax returns, even though there was no basis to assert such deductions.  After Defendant caused the fraudulent returns to be filed, R.S. received tax refunds for those years.

### k.   Defendant's Preparation of L.M.'s Tax Returns

61.   During the relevant time period, L.M. was a respiratory therapist from Yonkers working at a hospital in Manhattan.  She had no background in accounting.

62.   Defendant prepared tax returns on behalf of L.M. for the tax years 2010 and 2011, among other years.

63.   When Defendant prepared L.M.'s federal tax return for the 2010 tax year, Defendant grossly inflated L.M.'s unreimbursed employee business expenses, asserting a deduction for $9,555, even though L.M. did not provide Defendant with receipts or otherwise tell Defendant that she had unreimbursed employee business expenses in that amount.  After Defendant caused the fraudulent 2010 federal tax return to be filed, L.M. received a tax refund from the IRS in the amount of $2,529 for the year.

64.   When Defendant prepared L.M.'s federal tax return for the 2011 tax year, Defendant again grossly inflated L.M.'s unreimbursed employee business expenses.  In addition, Defendant used the Schedule C to falsely assert that L.M. owned a business, which she did not, with imaginary gross receipts of $4,525 and which – due to falsely reported business expenses of $10,652 – reported a loss in 2011.  After the filing of the fraudulent 2011 tax return prepared by Defendant, L.M. received a tax refund from the IRS in the amount of $3,465 for the year.

### l.   Defendant's Preparation of D.W.'s Tax Returns

65.   During the relevant time period, D.W. was restaurant manager who lived in the Bronx.  He had no background in accounting or tax preparation.

66.   Defendant prepared federal tax returns for D.W. the tax years 2009 to 2011.

67.   When Defendant prepared D.W.'s federal tax return for the 2009 tax year, Defendant fraudulently asserted a deduction for $1,523 in unreimbursed employee business

expenses in the form of non-commute related transportation expenses, even though D.W. did not provide Defendant with any receipts at all for unreimbursed employee business expenses or make any statements to Defendant asserting such expenses.  Defendant also fraudulently included a deduction of $6,859 in other unreimbursed employee business expenses on the same federal tax return.  After Defendant caused the fraudulent 2009 federal tax return to be filed, D.W. received a tax refund from the IRS in the amount of $2,534 for the year.

68.     For the tax years 2010 and 2011, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of D.W.  On each occasion, Defendant fraudulently asserted deductions for unreimbursed employee business expenses on D.W.'s tax return, even though there was no basis to assert such deductions.  After Defendant caused the fraudulent returns to be filed, D.W. received tax refunds for those years.

### m.     Defendant's Preparation of K.R.'s Tax Returns

69.     During the relevant time period, K.R. was security guard at the Metropolitan Museum of Art who lived in New Jersey.  He had no background in accounting or tax preparation.

70.     Defendant prepared joint federal tax returns for K.R. and his wife, who was a cashier at a Duane Reade, for the tax years 2009 to 2011.

71.     When Defendant prepared K.R.'s federal tax return for the 2009 tax year, Defendant fraudulently asserted a deduction for unreimbursed employee business expenses in an amount of $5,725, even though neither K.R. nor his wife provided Defendant with any receipts at all for unreimbursed employee business expenses or made any statements to Defendant asserting such expenses.  After Defendant caused the fraudulent 2009 federal tax return to be filed, K.R. received a tax refund from the IRS in the amount of $4,465 for the year.

72.     For the tax years 2010 and 2011, Defendant similarly prepared, and caused to be filed, false and fraudulent tax returns on behalf of K.R. and his wife.  On each occasion, Defendant fraudulently asserted deductions for unreimbursed employee business expenses on their tax return, even though there was no basis to assert such deductions.  After Defendant caused the fraudulent returns to be filed, K.R. received tax refunds for those years.

***

73.     Defendant himself personally prepared and filed the fraudulent federal tax returns on behalf of the clients described above, as he systematically did for clients throughout the tax years 2008 to 2014.

74.     Defendant's regular practice of filing false and fraudulent federal tax returns even included a tax return filed on behalf of an IRS undercover agent.

75.     On or about April 16, 2012, an IRS undercover agent, posing as a client, went to the Defendant's office to have a tax return prepared and to record his encounter with the Defendant.

76.     After meeting briefly with the undercover agent, the Defendant prepared a tax return which contained false and fraudulent itemized deductions, including charitable donations and unreimbursed employee business expenses.  None of these fraudulent deductions had been discussed with or documented by the undercover agent.   On the contrary, other than a single W2, the undercover agent provided no documentation to the Defendant and did not make any statements asserting any charitable contributions or unreimbursed employee business expenses.

77.     As a result of the inclusion of the false items on the tax return, Defendant produced a tax return that fraudulently generated a refund of $574 for the undercover agent, instead of a tax return that would have properly resulted in a tax liability.

78.    As noted above, in addition to systematically filing fraudulent federal tax returns on behalf of others, Defendant failed to report material portions of his income on his and his companies' federal tax returns.  Although he collected and deposited over $1 million in receipts for tax years 2010 through 2014, Defendant only reported $584,270 of gross receipts on his federal tax returns during the same period.  This conduct was concealed, in part, by Defendant's failure to file any W2s or Form 1099s on behalf of himself or any of his employees during that time frame.

**DEFENDANT'S CRIMINAL TRIAL AND CONVICTION**

79.    On March 30, 2016, Defendant was arrested and, on July 25, 2016, found guilty of 38 counts of aiding and assisting in the preparation of false and fraudulent U.S. individual income tax returns.  During the five-day trial, the thirteen individual clients discussed above testified, as did Defendant himself.  Defendant was sentenced to 51 months in prison and one year of supervised release, and ordered to pay a $125,000.00 fine. [2]

80.    As the Court itself expressly observed at the conclusion of Defendant's trial, Defendant repeatedly lied under oath throughout his testimony.  In response to Defendant's request to be released on bail pending sentencing, the Court rejected the request largely on the ground that the Defendant had "lie[d] so obviously, so repeatedly, and so seemingly without any concern for the consequences."  The Court observed that the Defendant had demonstrated such a "cavalier . . . attitude toward the oath and to his obligation to tell the truth," that Defendant was "unlikely . . . to take seriously his obligation to return to court" for sentencing.

81.    Defendant's sentence did not include a court-imposed limitation that would bar

---

[2] As noted above, Defendant's re-sentencing is presently scheduled in District Court for July 19, 2018, before the Honorable Cathy Seibel. *See, supra*, n. 1.

him from working as a tax preparer at the conclusion of his sentence.

## COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407

82.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 81 above.

83.     26 U.S.C. § 7407 authorizes the Court to enjoin a tax return preparer if the Court finds that the return preparer has engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) and that injunctive relief is appropriate to prevent the recurrence of the conduct. Section 6694(b) in turn imposes penalties on a tax return preparer who willfully attempts to understate the tax liability of another person or whose reckless or intentional disregard of rules and regulations results in the understatement of tax liability.

84.     26 U.S.C. § 7407 also authorizes injunctive relief where a tax return preparer "engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws."

85.     As set forth above, Defendant worked as an income tax return preparer as defined by the relevant provision, 26 U.S.C. § 7701(a)(36).

86.     As a tax return preparer, Defendant continually and repeatedly engaged in conduct that was subject to penalty under 26 U.S.C. § 6694(b) by preparing federal income tax returns that he knew contained false and/or fraudulent information and/or deductions. Defendant also engaged in fraudulent or deceptive conduct which substantially interfered with the proper administration of the Internal Revenue laws.

87.     Specifically, Defendant continually and repeatedly prepared federal income tax returns knowing that the returns would result in understatements of tax by, among other things, inflating the Schedule A deductions, including unreimbursed employee business expenses, gifts

to charity, and inflating Schedule C business expenses, on behalf of others.

88.     Injunctive relief is necessary and appropriate to prevent the recurrence of misconduct by Defendant because, absent an injunction, he is likely to continue preparing and filing false federal tax returns.

89.     As detailed above, even in the face of an investigation by the IRS and the subsequent criminal proceeding, the Defendant attempted to conceal his conduct and lied under oath.   Defendant, whose conduct persisted over an extended period of years, is likely to continue filing false federal tax returns if not barred from doing so.

90.     In the absence of an injunction, the United States will be put at risk of providing tax refunds to taxpayers not entitled to such refunds due to Defendant preparing tax returns for these taxpayers that do not report and/or pay the correct amounts of federal taxes owed.   In such event, the IRS will have to devote substantial time and resources to identifying and locating Defendant's customers, and then examining those customers' tax returns.   Pursuing all of Defendant's individual customers may be impossible given the IRS's limited resources.

91.     Pursuant to 26 U.S.C. § 7407, the Court should permanently enjoin Defendant from preparing or filing federal tax returns for others.

## COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408

92.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 81 above.

93.     26 U.S.C. § 7408 authorizes the Court to enjoin any person from engaging in conduct that is subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent the recurrence of that conduct.   Section § 6701, in turn, penalizes any person who aids or assists in the preparation of any portion of a federal tax return or other document knowing that it

will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it would result in an understatement of another person's tax liability. 28 U.S.C. § 6701(a).

94.     As set forth above, Defendant continually and repeatedly engaged in conduct that was subject to penalty under 26 U.S.C. § 6701 by preparing federal income tax returns for others knowing that the returns improperly claimed tax deductions and thereby illegally understated his customers' federal tax liabilities.

95.     Defendant's conduct is subject to penalty under 26 U.S.C. § 6701, but penalties alone will not deter him from reverting to such conduct. Unless enjoined, Defendant is likely to continue to prepare federal tax returns that he knows or should know will result in the understatement of tax liability.

96.     In the absence of an injunction, the United States will be put at risk of providing tax refunds to taxpayers not entitled to such refunds due to Defendant preparing tax returns for those taxpayers that do not report and/or pay the correct amounts of federal taxes owed. In such event, the IRS will have to devote substantial time and resources to identifying and locating Defendant's customers, and then examining those customers' tax returns. Pursuing all of Defendant's individual customers may be impossible given the IRS's limited resources.

97.     Pursuant to 26 U.S.C. § 7408, the Court should permanently enjoin Defendant from engaging in conduct subject to penalty under 26 U.S.C. § 6701 and from preparing federal tax returns for others.

## COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402

98.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 81 above.

99.    26 U.S.C. § 7402 authorizes the Court to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws," and further provides that such injunctive relief is "in addition to and not exclusive of any and all other remedies."  *Id.* § 7402(a).

100.    As set forth above, Defendant repeatedly engaged in conduct that substantially interfered with the administration and enforcement of the internal revenue laws. Further, unless enjoined from preparing tax returns for others, he is likely to engage in such conduct in the future.

101.    In light of the fraudulent and deceptive conduct by Defendant, as well as the estimated losses caused by the Defendant's conduct, the United States will be exposed to the risk of irreparable injury if Defendant is not barred from preparing federal tax returns for others.

102.    Specifically, the United States will be put at risk of providing tax refunds to taxpayers not entitled to such refunds due to Defendant's preparing for those taxpayers federal tax returns that do not report and/or pay the correct amounts of federal taxes owed.  In such event, the IRS will have to devote substantial time and resources to identifying and locating Defendant's customers, and then examining those customers' federal tax returns.  Pursuing all of Defendant's individual customers may be impossible given the IRS's limited resources.

103.    Enjoining Defendant from preparing federal tax returns for others is moreover in the public interest because an injunction will prevent the recurrence of illegal conduct and the harm such conduct will cause to the United States and the public.

104.    The Court should therefore order injunctive relief under 26 U.S.C. § 7402(a).

WHEREFORE, the United States prays that the Court enter an order that:

A. Finds that Defendant repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and/or 6701, and that injunctive relief pursuant to 26 U.S.C. §§ 7407 and 7408 is appropriate to prevent recurrence of such illegal conduct.

B. Finds that Defendant engaged in fraudulent or deceptive conduct which substantially interfered with the proper administration of the Internal Revenue laws, and that injunctive relief pursuant to 26 U.S.C. § 7407 is appropriate for this additional reason.

C. Finds that Defendant repeatedly engaged in conduct that interfered with the enforcement of the internal revenue laws and that injunctive relief against Defendant is appropriate to prevent recurrence of such conduct pursuant to 26 U.S.C. § 7402 and the Court's inherent authority.

D. Enjoins Defendant, directly or indirectly, from:

1. Preparing or filing, or assisting in preparing or filing, any federal tax return, amended return, or other federal tax document or form for any person other than himself;

2. Representing any person before the IRS, or advising, assisting, counseling, or instructing anyone about preparing a federal tax return;

3. Employing any person who prepares or files, or assists in preparing or filing, any federal tax return, amended return, or other federal tax document or form for any person;

4. Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number or an Electronic Filing Identification Number;

5. Having an ownership interest in an entity that is in the business of (i)

preparing federal tax returns or other federal tax documents or forms for other

persons or representing any person before the IRS, or (ii) advising, assisting,

counseling, or instructing anyone about preparing a federal tax return;

6.  Engaging in any conduct that violates 26 U.S.C. §§ 6694 or 6701; and

7.  Engaging in any conduct that substantially interferes with the proper

administration and enforcement of the internal revenue laws.

E.  Authorizes the United States to take such steps as necessary, including but not limited

to post-judgment discovery, to monitor and ensure compliance with the Court's

injunction against Defendant.

F.  Retains jurisdiction over Defendant and over this action to enforce any injunction

entered against Defendant.

G.  Grants such further relief as the Court deems appropriate.

Dated:  New York, New York
        July 5, 2018

                                    GEOFFREY S. BERMAN
                                    United States Attorney of the
                                    Southern District of New York

                        By:

                                    Jennifer C. Simon
                                    Assistant United States Attorney
                                    86 Chambers Street, Third Floor
                                    New York, New York 10007
                                    Tel.: 212-637-2746
                                    Email: Jennifer.Simon@usdoj.gov

22